**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| *In re Ex Parte Application of* | : | **Civil Action No. 22-3028-ES-AME** |
|  | : |  |
| Yilport Holding A.S., | : | **OPINION and ORDER** |
|  | : |  |
| Petitioner, | : |  |
|  | : |  |
| For the Issuance of a Subpoena for the Production of Documents for Use in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782. | : |  |

**ESPINOSA**, Magistrate Judge

This matter comes before the Court on the motion filed by subpoena respondent Ports America, Inc. ("Ports America") to quash and to vacate the Court's August 8, 2022 Order authorizing the issuance of a subpoena pursuant to 28 U.S.C. § 1782. Subpoena applicant Yilport Holdings A.S. ("Yilport") opposes the motion. In its discretion, the Court decides the motion on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b). For the following reasons, the motion is granted.

## I.    BACKGROUND

This matter concerns Yilport's request for discovery from Ports America, seeking documents and information Yilport asserts it intends to use in a foreign legal proceeding against the Mississippi State Port Authority ("MSPA"). Yilport is an international port developer and operator based in Turkey. *See* Sapiña Decl. ¶ 1.[1] Ports America is a New Jersey-based marine

---

[1] Declaration of Rafael Bernardo Sapiña García (ECF 1-2).

terminal operator, which works in dozens of locations including Mississippi's Port of Gulfport. *See* Smith Decl. ¶ 10.[2]

Yilport had been pursuing a business transaction with the MSPA to develop and operate the Port of Gulfport. Sapiña Decl. ¶¶ 6-10. In connection with that venture, Yilport and the MSPA entered into a "letter of intent" on December 19, 2019 (the "LOI"). *Id.* ¶ 6 and Ex. 1. The LOI, in its original version, contained an exclusivity provision, which, broadly summarized, barred the MSPA from considering, soliciting, or encouraging any proposal from or negotiating with any person or entity other than Yilport, for a period of 180 days from the date of the LOI or its termination, whichever was longer. *Id.* ¶ 7 and Ex. 1 at ¶ 5.[3] By letter dated November 16, 2021, the MSPA terminated the LOI. *Id.* ¶ 9. According to Yilport's Chief Terminal Development Officer, Rafael Sapiña, negotiations between the MSPA and Yilport stalled in or about March 2021, coinciding with the naming of the MSPA's new CEO, Jonathan Nass. *Id.* ¶ 12. Yilport asserts that Mr. Nass was familiar with Ports America based on his previous dealings with the company while he was CEO of the Maine Port Authority. *Id.* ¶¶ 11, 13. According to Mr. Sapiña, Yilport has reason to believe that, during the LOI exclusivity period, the MSPA considered, solicited, or encouraged proposals from Ports America to continue operating the Port of Gulfport. *Id.* ¶ 13.

Thereafter, Yilport took action to commence legal proceedings against the MSPA. On March 11, 2022, Yilport served a notice of claim on the MSPA, a mandatory precondition to suit under the Mississippi Tort Claims Act, Miss. Code Ann. § 11-46-11, concerning its intent to sue for breach of contract, breach of the covenant of good faith and fair dealing, and unjust

---

[2] Declaration of Christopher Smith (ECF 8-3).
[3] The LOI was later amended to state that the LOI could be terminated, by either party, after February 28, 2021. *See* Sapiña Decl. Ex. 1.

enrichment. Sapiña Decl. ¶ 16; Second Hill Decl. Ex. K ¶ 21.[4] On April 8, 2022, it filed a petition for mediation in Turkey, alleging the MSPA breached the LOI's exclusivity provision by engaging in discussions with Ports America (the "Turkish Proceeding"). *See* First Birengel Decl. ¶ 9.[5] A meeting was convened by the Turkish mediator on May 16, 2022, but the dispute between Yilport and the MSPA did not resolve. *Id.* ¶ 14. As such, Yilport asserted it would proceed to file an action against the MSPA with the Istanbul Commercial Court. *Id.* Yilport in fact proceeded to file a claim against the MSPA in the Istanbul 16 Commercial Court of First Instance, on June 9, 2022. *See* Second Birengel Decl. ¶ 4.[6]

On May 24, 2022, Yilport initiated this action, pursuant to 28 U.S.C. § 1782, by filing an *ex parte* motion for issuance of a subpoena in aid of a foreign proceeding. In its motion, Yilport represented that it believed Ports America possessed information relevant to its claims against the MSPA for breach of the LOI and thus requested that the Court authorize a subpoena for discovery from Ports America for use in connection with the Turkish Proceeding. Upon consideration of the *ex parte* submission and its supporting declarations by Yilport's counsel in the Turkish Proceedings and its Chief Terminal Development Officer, the Court found Yilport made a sufficient prima facie demonstration that Section 1782's requirements had been met and granted the motion on August 8, 2022.

Ports America was served with Yilport's document subpoena on or about August 23, 2022 (the "Subpoena"). *See* First Hill Decl. ¶ 5. The Subpoena seeks, among other things, all communications between Ports America and the MSPA concerning the expansion of Ports America's provision of services at the Port of Gulfport; communications concerning the

---

[4] Second Declaration of J. Lee Hill (ECF 14-1).
[5] Declaration of Tilbe Birengel (ECF 1-4). Yilport's Turkish counsel states mediation is a mandatory preliminary step before initiating commercial litigation under Turkish law. *Id.* ¶ 10.
[6] Declaration of Tilbe Birengel, dated Oct. 24, 2022 (ECF 10-1).

transaction identified and described in the LOI; and all documents in Ports America's possession concerning that transaction, Yilport, and Mr. Nass's relationship with Ports America. *See* First Hill Decl. Ex. A.[7] Ports America and Yilport thereafter engaged in several meet-and-confer sessions in an effort to narrow the Subpoena's scope and implement protections for commercially sensitive information. First Hill Decl. ¶¶ 8-10. Ports America asserts that, in the course of those discussions, it began to doubt whether Yilport had served the Subpoena for a legitimate purpose, that is, to obtain discovery for use in the Turkish Proceeding, or whether it was instead seeking to obtain discovery prior to initiating suit against the MSPA in Mississippi. First Hill Decl. ¶¶ 13-14.

Reaching no agreement regarding the Subpoena, Yilport and Ports America sought the Court's assistance, by joint dispute letter filed September 26, 2022. With leave of Court, this motion to quash was filed on September 30, 2022.

The motion provides the Court with additional facts concerning Yilport's efforts to secure documents in connection with its existing and/or contemplated claims against the MSPA. Of relevance to the issue before this Court, Yilport's counsel in Mississippi, Christopher Solop, filed a public records request with the MSPA on July 28, 2022. First Hill Decl. Ex. D, at attached Ex. A. The request listed six categories of documents sought from MSPA, all concerning the development of the Port of Gulfport and several directed specifically to interactions with Ports America and/or Yilport. For example, it requested, for the time period December 19, 2019 through May 15, 2022, the following: "[a]ll communications between the MSPA and Ports America concerning expanding, enhancing or changing Ports America's provision of terminal services at the Port;" "[a]ll communications between the MSPA and Ports America and/or any

---

[7] Declaration of J. Lee Hill, dated Sept. 20, 2022 (ECF 8-2).

other Provider or person concerning Yilport, the LOI, the Transaction, and/or the Exclusivity

Period;" and "[a]ll documents concerning Yilport, the LOI, the Transaction and/or the

Exclusivity Period." *Id.* Additionally, it appears that, on or about June 6, 2022, the MSPA filed a

declaratory judgment action against Yilport in the state court of Mississippi, concerning alleged

breach of the LOI, and that Yilport was served with that declaratory judgment complaint in or

about September 2022. *See* Second Hill Decl. ¶¶ 10-11, Ex. I and J. Yilport answered the

complaint and counterclaimed for breach of contract, alleging the MSPA violated the LOI's

confidentiality and exclusivity provisions by negotiating with and accepting proposal from third

parties. Second Hill Decl. Ex. K.

## II.    DISCUSSION

### A.    Legal Standard

Under 28 U.S.C. § 1782, a federal district court may order that discovery be provided in

aid of a foreign proceeding. *See Intel Corp. v. Advanced Micro Devices Inc.*, 542 U.S. 241, 255

(2004). The applicant for domestic discovery in aid of a foreign proceeding must establish, at a

minimum, the following statutory requirements: (1) the application is made by a foreign or

international tribunal or any interested person; (2) the person from whom discovery is sought

resides or is found within the district; (3) the discovery is for use in a proceeding before a foreign

or international tribunal. *See* 28 U.S.C. § 1782; *see also Intel*, 542 U.S. at 264-65 (holding the

burden is on the applicant to demonstrate a subpoena pursuant to Section 1782 should issue); *In

re Mesa Power Group, LLC*, No. 11-280, 2012 WL 6060941, at *3 (D.N.J. Nov. 20, 2012)

(identifying statutory requirements applicant must meet to obtain discovery under Section 1782).

Even where these basic requirements are met, the decision to authorize discovery

pursuant to Section 1782 lies within a court's broad discretion. *Intel*, 542 U.S. at 264 ("a district

court is not required to grant a § 1782(a) discovery application simply because it has the

authority to do so."); *see also In re O'Keeffe*, 646 F. App'x 263, 265-66 (3d Cir. 2016) (holding

that, in deciding a Section 1782 application, a court first determines whether the statutory

requirements are met and then evaluates whether to authorize the discovery as a matter of its

discretion). In *Intel*, the Supreme Court identified four factors informing this discretionary

decision: "(1) whether the evidence sought is within the foreign tribunal's jurisdictional reach,

and thus accessible absent section 1782 aid; (2) the nature of the foreign tribunal, the character of

the proceedings underway abroad, and the receptivity of the foreign government or the court or

agency abroad to U.S. federal-court judicial assistance; (3) whether the request conceals an

attempt to circumvent foreign proof gathering restrictions or other policies of a foreign country

or the United States; (4) whether the subpoena contains unduly intrusive or burdensome

requests." *O'Keeffe*, 646 F. App'x at 266 (citing *Intel*, 542 U.S. at 264-65).[8]

    An order authorizing discovery under Section 1782 may be issued on an *ex parte*

application, without prejudice to the subpoenaed party's right to file a motion to vacate the order

and/or quash the subpoena. *See Mesa Power Group*, 2012 WL 6060941, at *4; *see also In re*

*Letter Request from Supreme Court of Hong Kong*, 138 F.R.D. 27, 32 n. 6 (S.D.N.Y. 1991)

(noting *ex parte* process to obtain an order authorizing discovery under Section 1782 is justified

by the fact that "the parties will be given adequate notice of any discovery taken pursuant to the

---

[8] In a decision pre-dating *Intel*, the Third Circuit described Section 1782's prima facie elements as "modest" and thus, consistent with a liberal interpretation of the statute, held once these elements are met, "district courts should treat relevant discovery materials sought pursuant to Section 1782 as discoverable unless the party opposing the application can demonstrate facts sufficient to justify the denial of the application." *In re Bayer AG*, 146 F.3d 188, 195 (3d Cir. 1998). Even so, the Circuit noted whether to grant an application under Section 1782 was a matter for a court's discretion. *Id.* at 195-96. Indeed, as noted by former Chief Judge Wolfson, the Third Circuit made clear that "while section 1782 was enacted to 'facilitate the conduct of litigation in foreign tribunals, improve international cooperation in litigation, and put the United States into the leadership position among world nations,' *In re Bayer AG*, 146 F.3d at 191–92, 'these goals do not in turn mean that a party in foreign litigation is entitled to unbridled and unlimited discovery under the statute.' *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999)." *Cal. State Teachers Ret. Sys. v. Novo Nordisk, Inc.*, No. 19-16458, 2020 WL 6336199, at *5 (D.N.J. Oct. 29, 2020).

request and will then have the opportunity to move to quash the discovery or to participate in it."). Indeed, the Third Circuit has held that "Section 1782 . . . incorporates by reference the scope of discovery permitted by the Federal Rules of Civil Procedure." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 192 (3d Cir. 1999). As such, a subpoena issued pursuant to Section 1782 may be quashed or modified in accordance with Federal Rules of Civil Procedure. *See Mesa Power Group*, 2012 WL 6060941, at *3; *In re Lazaridis*, 865 F. Supp. 2d 521, 523 (D.N.J. 2011) (entertaining motion to quash subpoena initially authorized under Section 1782, noting "because the application was made *ex parte*, the Court allowed the Subpoena to be served but reserved judgment as to the propriety of the substance of the Subpoena under the [applicable] discretionary factors").

### B.  Analysis

On Yilport's *ex parte* application under Section 1782, the Court found the three statutory requirements satisfied. First, concerning the discovery at issue—the Subpoena directed to Ports America—Yilport met the "interested party" requirement, based on its initiation of the mediation procedure and intended subsequent filing of a case in Istanbul Commercial Court. A foreign proceeding need not be pending at the time a Section 1782 application is filed, provided it is "within reasonable contemplation." *Intel*, 542 U.S. at 259. "Reasonable contemplation" requires some showing of "objective indicium" and a "concrete basis" that a contemplated action will proceed. *See, e.g., Certain Funds, Accountants and/or Inv. Vehicles v. KPMG, LLP*, 798 F. 2d 113, 123-24 (2d Cir. 2015). Second, Yilport established the discovery sought was "for use" in a foreign proceeding, asserting, through the declaration of its Turkish counsel that the documents sought in the proposed Subpoena were "important to Yilport's ability to pursue its claims against the MSPA . . . before the Istanbul Commercial Court." First Birengel Decl. at ¶ 15. Third,

7

Yilport's application stated that the party against which discovery was sought, Ports America, is headquartered in New Jersey, and thus the target of the proposed Subpoena is found in this district. Although the *ex parte* application was granted by order entered August 8, 2022, such order issued without prejudice to any later challenge by Ports America.

Ports America now moves to vacate the August 8, 2022 order, primarily on grounds Yilport has not adequately demonstrated the discovery is for use in foreign proceedings, as required by Section 1782. Ports America also contends that, even if the statutory requirements are satisfied, the discretionary *Intel* factors militate against authorizing Yilport's request for discovery in aid of the Turkish Proceedings. Finally, Ports America argues that the Subpoena should be quashed, under Federal Rule of Civil Procedure 45, as overly broad and unduly burdensome, particularly because it calls for production of confidential and competitively sensitive information.

1. Section 1782's "For Use" Requirement

Ports America asserts Yilport's conduct in pursuing the subpoenaed documents and other information concerning the MSPA's alleged breach of the LOI belies its representation that the discovery is sought for use in the Turkish Proceedings. That is, Ports America contends Yilport has misused the process authorized by Section 1782, filing its application to obtain discovery in support of a then-anticipated lawsuit against the MSPA in the Mississippi. As such, Ports America argues Yilport's application was designed to circumvent state and federal rules barring pre-suit discovery and thus fails to meet Section 1782's basic requirements.

Ports America bases its contention on the following facts, set forth in the Declaration of its counsel J. Lee Hill, which he asserts upon his personal knowledge of the meet-and-confer process regarding the Subpoena:

- On August 29, 2022, Ports America requested an additional 30 days, from August 31, 2022 to September 30, 2022, to respond to the Subpoena. First Hill Decl. Ex. B. During the phone call between counsel the following day, Yilport "offered to extend the subpoena response deadline to September 9, explaining that Yilport was focused on the statute of limitations that applied to its potential Mississippi claim against the MSPA, which would expire in mid-September." *Id.* ¶ 8 and Ex. C at 15-16. In a subsequent meet-and-confer session, on September 6, 2022, Yilport's counsel agreed to extend the deadline to September 28, stating they believed they had more time to sue the MSPA in Mississippi. *Id.* ¶ 10.

- Throughout the process, Ports America expressed concern with protecting its commercially sensitive information. *Id.* ¶ 9-13 and Ex. C at 10-11. According to Ports America's attorney, "Yilport's counsel proposed to agree to a protective order with an AEO [attorneys' eyes only] provision that would limit access to Yilport's U.S. counsel, but rejected the suggestion that there also be a provision limiting use of produced documents to the Turkish proceeding." *Id.* ¶ 13; *see also id.* ¶ 16 and Ex. C at 3-5.

- On or about July 28, 2022, Yilport had filed a public records request seeking that the MSPA produce "many of the same documents and communications as those requested by the subpoena." *Id.* ¶ 20 and Ex. D at 10-11. When Ports America's counsel expressed concern regarding the overlap and requested by that its deadline to respond to the Subpoena be tolled until Yilport exhausted its public records request to the MSPA, "Yilport's counsel refused that request and asserted that the MSPA was 'objecting' to Yilport's public records request, and that it was unclear 'when or whether' Yilport would receive the requested documents." *Id.* ¶ 14 and Ex. C at 6-7.

- Yilport failed to provide information about the Turkish Proceedings, despite Ports America's requests. Hill states that, during the September 22, 2022 phone call, "Yilport's counsel asserted that there were hearings and deadlines forthcoming in the Turkish proceeding, but refused to specify their nature or identify the specific dates; they otherwise refused to provide additional information about the Turkish proceeding, including a copy of the complaint." *Id.* ¶ 13.

Ports America adds that, in reviewing this motion, the Court should also consider the weakness of Yilport's breach of contract claim against the MSPA, which it maintains is based on nothing more than its information and belief that the coincidental timing of a new CEO at the MSPA and the termination of the LOI some months later gives rise to the inference of activity in violation of the LOI's exclusivity provision. Ports America argues that these facts, taken together, demonstrate Yilport's application under Section 1782 was made in bad faith, intended not to obtain documents "for use" in foreign litigation but to shore up the claims against the MSPA in the anticipated Mississippi action.

This argument relies heavily on various decisions from the Southern District of New York, in which the district court denied applications for discovery under Section 1782 where there were similar indicia that the discovery's true purpose was not "for use" in a foreign proceeding but rather to evade a rule or order prohibiting discovery in a U.S.-based action. *See, e.g., Associação dos Profissionais dos Correios v. Bank of N.Y. Melon Corp.*, No. 22-132, 2022 WL 4955312, at *6-7 (S.D.N.Y. Oct. 4, 2022) (concluding that evidence before the court indicated "that ADCAP [the applicant] is trying to get around the pre-suit discovery restrictions in U.S. federal court" and denying application); *In re Postalis*, No. 18-497, 2018 WL 6725406, at *5 (S.D.N.Y. Dec. 20, 2018) (denying an application under Section 1782 for failure of

applicant to meet "for use" requirement, reasoning that "seeking discovery under § 1782 for an improper purpose, namely for pre-litigation discovery … is bad faith."); *In re Asia Mar. Pac. Ltd.*, 253 F. Supp. 3d 701, 706-07 (S.D.N.Y. 2015) (holding that "reciting some minimal relation to a pending foreign proceeding" fails to satisfy Section 1782's "for use" requirement and denying discovery where the applicant had failed to assure the court it would not be used in potential collateral proceedings). These decisions, in turn, rely on the Second Circuit's statutory construction of Section 1782, which holds that the "for use" requirement demands some demonstration that the requested evidence will actually be used in the foreign proceedings to increase the applicant's chances of success of its claim. *See Mees v. Buiter*, 793 F.3d 291, 299-300 (2d Cir. 2015); *see also Certain Funds, Accounts and/or Investment Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 121-22 (2d Cir. 2015) (holding demonstration of "for use" deficient insofar as applicant lacked procedural ability to submit evidence to the foreign tribunal). For example, in *Certain Funds v. KPMG*, the Second Circuit affirmed the district court's denial of an application for discovery in aid of a foreign proceeding, finding that the applicant's mere assertion that the information sought would be relevant to the foreign proceedings failed to establish the discovery was "for use" within the meaning of Section 1782. *Certain Funds*, 798 F.3d at 120. The Circuit held:

> The relevance of the information sought to the subject of the proceeding is not sufficient in and of itself to authorize the district court to order discovery. By adopting the phrase "for use," Congress plainly meant to require that § 1782 applicants show that the evidence sought is "something that will be employed with some advantage or serve some use in the proceeding." *Mees*, 793 F.3d at 297 . . . The key question, therefore, is not simply whether the information sought is relevant, but whether the [applicant] will actually be able to use the information in the proceeding.

*Id.* at 120. Accordingly, the Court of Appeals reviewed the Section 1782 applicant's description of the foreign proceeding and found it lacking as to any information establishing "that any of the

evidence they seek could actually be used in any of the foreign proceedings that were pending at the time they made their application." *Id.* at 121.

Here, although the Court refrains from concluding that Yilport's application was made in bad faith, it is compelled to note the thinness of Yilport's opposition to this motion to quash. Yilport has failed to refute the pointed statements made by Ports America's counsel accusing Yilport of filing the Section 1782 application as an end-run maneuver to secure information meant for use in the anticipated Mississippi state action against the MSPA. Indeed, Yilport does not dispute that it intends to use information obtained in response to the Subpoena in both the Turkish Proceedings and the Mississippi lawsuit. It argues, citing *Intel*, that discovery pursuant to Section 1782 is appropriate "whenever the evidence will ultimately be used in a foreign proceeding" (Opp'n at 8), but its reliance on *Intel* for this proposition is wholly misplaced. Yilport's brief includes a quote, attributed to *Intel*, that "[i]t is not necessary for the adjudicative proceeding to be pending at the time the evidence is sought, but only that the evidence is eventually to be used in such a proceeding." *Id.* This statement, in fact, originates in a treatise cited by *Intel. See* 542 U.S. 259. In context, the citation supports *Intel*'s holding that a foreign proceeding need not be pending at the time a Section 1782 application is filed, provided it is "within reasonable contemplation." *Id.* In short, Yilport's tacit admission that its Subpoena serves a hybrid purpose, in aid of both foreign and domestic discovery, is troubling.

On the *ex parte* application, Yilport asserted, through counsel representing it in the Turkish Proceedings, that the information sought in the Subpoena was intended for use in its then-imminent commercial suit against the MSPA for breach of the LOI. The facts presented sufficed to establish a minimal demonstration that Section 1782's requirements were satisfied, and the application was accordingly granted. Now, despite this motion's challenges to the

validity of the Subpoena, Yilport merely repeats the same threadbare information, asserting through its counsel, that "Yilport has reason to believe that Ports America has relevant information relating to the MSPA's conduct during the [LOI] Exclusivity Period" and that "[d]ocuments regarding Ports America's involvement and dealings would all be used to support Yilport's claims of the MSPA's breach of the LOI." Second Birengel Decl. at ¶¶ 8-9. Even crediting this assertion that the documents sought are relevant, the Court finds that the absence of any demonstration of how the information will be used in the foreign proceeding falls short of meeting Section 1782's basic requirements. *See Certain Funds*, 798 F.3d at 120.[9] Missing from Yilport's submissions on this motion is any explanation of the process for gathering and presenting information to the presiding Turkish court, other than to state that the Subpoena is important because "it is difficult to enforce locally the collection of evidence" against parties and third-parties foreign to Turkey. Second Birengel Decl. ¶ 13. Counsel states that the first hearing in the Turkish Proceedings is scheduled for February 7, 2023, and that discovery from Ports America is sought "for use" in that hearing, *see id.* ¶¶ 6, 11, but provides no details concerning what such an initial hearing entails and whether there will even be opportunity to present evidence. As Ports America notes, Yilport has not even shared the complaint, or comparable initiating petition, filed against the MSPA in the Istanbul Commercial Court. Without providing any information at all concerning the process attendant to the Turkish Proceedings or elaborating on its contemplated use of third-party discovery from Ports America, Yilport makes only the most perfunctory demonstration the discovery is "for use" in a foreign proceeding.

---

[9] Other courts within the District of New Jersey have similarly relied on the Second Circuit's persuasive authority in analyzing Section 1782(a)'s "for use" requirement. *See In re Third Eye Capital Corp.*, No. 22-963, 2022 WL 713758, at *3 (D.N.J. Mar. 10, 2022); *In re JSC United Chem. Co.*, No. 20-3651, 2020 WL 4251476, at *4 (D.N.J. July 24, 2020).

2. *Intel* Factors

Assuming, however, that the basic statutory requirements of Section 1782 are satisfied, the Court will proceed to the second step of the required analysis. The Court now has evidence before it, not available when it decided the ex parte application, warranting consideration as a matter of the Court's discretion. Thus, the Court will consider whether its August 8, 2022 order granting the application may stand in light of the four *Intel* factors.

Factor 1: whether the evidence sought is within the foreign tribunal's jurisdictional reach

The Supreme Court has held that "when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid is generally not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264. When the respondent is a participant in the foreign proceeding, Section 1782 discovery in the United States is less critical, "because a foreign tribunal has jurisdiction over those appearing before it and can itself order them to produce evidence." *Id.* at 264. While some of the discovery sought from Ports America might not be accessible without the aid of Section 1782 because it is not a party to the Turkish Proceedings,[10] a significant portion of the Subpoena directed to Ports America seeks communications it had with the MSPA. These documents would presumably be equally available from the MSPA, a direct, and indeed focal party, to the Turkish Proceedings. It is not clear to the Court that such information could not be obtained without the aid of Section 1782. This factor thus weighs against discovery.

---

[10] Here, the Court reaches no conclusions about what the Turkish courts can and cannot order with respect to discovery or some similar evidence-finding procedure. The only information provided is that Ports America is not subject to the Turkish courts' jurisdiction, at least in connection with Yilport's foreign suit against the MSPA, and the representation by Yilport's counsel in Turkey that it is difficult to collect evidence from foreign parties, outside the jurisdictional reach of the Turkish courts. Second Birengel Decl. ¶ 13.

    <u>Factor 2: the nature of the foreign litigation, the character of the proceedings already</u> <u>underway, and the foreign country's receptivity to court assistance from the U.S.</u>

    As noted, the Court has little to no information concerning the nature of the foreign tribunal or the character of the Turkish Proceedings. However, Yilport has cited a decision, issued in another federal district court, indicating the Turkish courts might be receptive to evidence obtained with the assistance of U.S. courts. *See Kardas v. Astas Holdings A.S.*, No. 19-80174, 2019 WL 3365636, at *3 (N.D. Cal. July 25, 2019) (stating that, because the Turkish court had requested discovery assistance, the federal court considering the application assumes that the discovery would not be contrary to the policies or proof-gathering restrictions of the foreign court). In this case, the second *Intel* factor is, on balance, neutral. *See In re O'Keeffe*, No. 14-5835, 2015 WL 540238, at *4 (D.N.J. Feb. 10, 2015) (stating "the general view is that the second *Intel* factor weighs against discovery only where there is "authoritative proof" that the foreign court would reject the evidence.") (citing *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir.1995), *affirmed by* 646 F. App'x 21673 (3d Cir. 2016).

    <u>Factor 3: Whether the applicant is attempting to circumvent proof-gathering restrictions</u> <u>in foreign or American courts</u>

    The unrefuted evidence presented on this motion, concerning positions taken by Yilport in negotiating the timing and conditions of Ports America's response to the Subpoena, reveals that, at least to some degree, Yilport's pursuit of third-party discovery under Section 1782 may be intended to circumvent the proof gathering process in the United States and abroad. Rather than address Ports America's argument that it has filed this application to sidestep discovery restrictions, Yilport instead states that Section 1782 does not require an applicant to exhaust a foreign tribunal's fact gathering process before seeking relief under the statute. *See, e.g., In re*

*Bayer AG*, 146 F.3d at 195–96 ("a quasi-exhaustion requirement . . . has been rejected by those courts that have addressed it."). That may be so, but Yilport's efforts to obtain information related to its claim for breach of the LOI in connection with the Turkish Proceedings are nevertheless relevant to the discretionary analysis on a Section 1782 application and may properly be considered the Court, particularly as to the third *Intel* factor. *See In re Application for Discovery for Use in Foreign Proceeding Pursuant to 28 U.S.C. § 1782*, No. 17-4269, 2019 WL 168828, at *11-12 (D.N.J. Jan. 10, 2019). Here, Yilport remains silent on those efforts, if any. Such silence strongly suggests it has not tried to obtain discovery, at least from the MSPA, through discovery tools available in the Turkish Proceedings, and this omission weighs against authorizing discovery here, especially given that at least four of the ten items requested in the Subpoena pertain to communications between Ports America and the MSPA. Worse, however, is the significant indication that Yilport utilized Section 1782 to obtain pre-litigation discovery to support what was then an imminent, and now pending, breach of contract action against the MSPA in the United States. Ports America's submissions to the Court demonstrate that Yilport tied the Subpoena's return date, and its agreement to extend the time to respond, to its deadline for filing suit in Mississippi prior to expiration of the applicable limitations period, a fact Yilport does not deny. Moreover, insofar as Ports America and Yilport discussed the need for a protective order, Yilport's offer to restrict access to the documents to its U.S. counsel, rather than to counsel involved in the Turkish Proceedings, simply makes no sense, if the discovery is truly sought in aid of foreign proceedings. Yilport's inverted stance on agreeing to protections for Ports America's documents further suggests that it is on a fishing expedition for material to use

in its domestic action against the MSPA.[11] While subsequent use of discovery properly obtained pursuant to Section 1782 is not proscribed, the statutory mechanism may not be employed in aid of domestic litigation and certainly not to dodge prohibitions on pre-suit discovery. *See Postalis*, 2018 WL 6725406, at *4-5 (denying Section 1782 application where foreign action was filed a means to obtain pre-litigation discovery in a domestic action); *Ayyash v. Crowe Horwath LLP*, No. 17-mc-482, 2018 WL 2976017, at 3 (S.D.N.Y. June 13, 2018) (denying application as a matter of the court's discretion, expressing it was "concerned that [the applicant] is using the § 1782 petition as a fishing expedition to determine if it should pursue litigation"). Here, the totality of facts suggests Yilport's efforts to obtain discovery from Ports America might be motivated more by the anticipated domestic suit against the MSPA than the Turkish Proceedings. The third factor weighs decidedly against authorizing the Subpoena.

Factor 4: whether the request for discovery is unduly intrusive or overly broad

The Third Circuit has held that this factor "aligns with Rules 26 and 45" of the Federal Rules of Civil Procedure. *In re Ex Parte Glob. Energy Horizons Corp.*, 647 F. App'x 83, 85-86 (3d Cir. 2016). Thus, discovery requested under Section 1782 must be relevant and proportional, pursuant to Rule 26, and must be designed "to avoid imposing undue burden or expense on a person subject to the subpoena," as required by Rule 45. *Id.* at 86. Here, Ports America argues that the Subpoena fails to meet this standard, for various reasons: it is largely duplicative of material in Yilport's public records request to the MSPA; the records requested are irrelevant because Yilport's basis for believing Ports America was involved in the MSPA's alleged breach of the LOI lacks factual support and because there is no relation between Yilport's internal

---

[11] Indeed, Yilport does not deny that its intention to use the discovery in the Mississippi action was discussed during the meet-and-confer process related to the Subpoena and during the Court's September 27, 2022 telephonic conference, held in an effort to resolve this dispute without motion practice.

records and the alleged breach; and the Subpoena is, as a whole, overbroad and unduly burdensome.

Ports America's challenges to the Subpoena are well-founded. Of particular significance to the Court is the public records request filed by counsel for Yilport with the MSPA on July 28, 2022. Although the Court was not aware of the public records request when it granted Yilport's Section 1782 application on August 8, 2022, it has now had the opportunity to review it. As noted by Ports America, many of the items requested in the Subpoena, particularly those concerning the MSPA's communications with Ports America concerning development of the Port of Gulfport, are duplicative of the requests made directly to the MSPA. In the Court's view, burdening non-party Ports America with a production request for documents Yilport can and is pursuing from a direct party to the Turkish Proceedings weighs strongly against enforcement of the Subpoena.

As to the Subpoena's requests for internal documents, the requests are, as Ports America argues, overly broad. Based on Yilport's description of the Turkish Proceedings—the Court, as noted, has not been provided with a copy of the complaint filed—the claim for breach of the LOI rests on the theory that the MSPA engaged in prohibited communications or other similar activity with Ports America concerning development of the Port of Gulfport. Yet, several items in the Subpoena pertain to topics going far beyond that claim. For example, the Subpoena includes requests as broad as "all documents concerning the Transaction," defined as the transaction proposed in the LOI, and "all documents concerning any lobbying efforts by Ports America in respect of the Port, Yilport, and/or the Transaction." First Hill Decl. Ex. A, Subpoena ¶¶ 7-8.) Insofar as Yilport maintains the MSPA breached the LOI's exclusivity provision, even if the Court were to assume such a violation arose from discussions or negotiations with Ports

18

America, the Subpoena's requests would encompass matters with no apparent connection to the MSPA's alleged breach. Such overbreadth weighs in favor of quashing the Subpoena as a whole. *In re Application for Discovery for Use in Foreign Proceeding Pursuant to 28 U.S.C. § 1782*, 2019 WL 168828, at *13 (affirming denial of application for Section 1782 discovery and finding the court properly refrained from narrowing the overbroad request, noting that "[w]hen a party chooses to serve overly broad discovery, it runs the risk that the discovery will be denied outright without an opportunity to narrow it.") (quoting *In re Macquarie Bank Ltd.*, No. 14-797, 2015 WL 3439103, *9 (D. Nev. May 28, 2015), reconsideration denied, 2015 WL 7258483 (D. Nev. Nov. 17, 2015)).[12]

Thus, based on the foregoing analysis, the Court concludes the *Intel* factors weigh against permitting Yilport to enforce its Subpoena for discovery from Ports America. In its discretion, the Court finds that the discovery sought by Yilport pursuant to Section 1782 is not warranted.

## III.   CONCLUSION AND ORDER

For the foregoing reasons, the Court concludes its August 8, 2022 order granting Yilport's *ex parte* application for discovery pursuant to Section 1782 must be vacated and the Subpoena issued pursuant to that order quashed. Accordingly,

**IT IS** on this 21st day of February 2023,

---

[12] Additionally, as Ports America points out in its reply brief, the link between any documents in Ports America's possession and Yilport's claim of breach has been called into question, given the chronology of events and Yilport's stated basis for believing Ports America was involved in the MSPA's alleged breach of the LOI. In its *ex parte* application for discovery under Section 1782, Yilport represented that negotiations between Yilport and the MSPA stalled in March 2021, when Jonathan Nass was named CEO of the MSPA, and further stated that the LOI was thereafter terminated by the MSPA, on November 16, 2022, prior to expiration of the LOI's exclusivity period in May 2022. Because Mr. Nass had previously worked with Ports America, Yilport represented it had reason to believe the MSPA had engaged in prohibited communications or discussions with Ports America concerning development of the Port of Gulfport during the exclusivity period. However, on this motion, Ports America has pointed to two key facts undermining the basis for Yilport's Subpoena: the LOI exclusivity period expired on February 28, 2021, and Mr. Nass did not become CEO of the MSPA until June 1, 2021.

**ORDERED** that respondent Port America's motion to vacate and quash subpoena [ECF 8] is **GRANTED**; and it is further

**ORDERED** that the Court's order of August 8, 2022 is vacated, and the Subpoena issued pursuant thereto is quashed; and it is further

**ORDERED** that the Clerk shall mark this case **CLOSED**.

 /s/ *André M. Espinosa*

ANDRÉ M. ESPINOSA
United States Magistrate Judge
